Argued and submitted November 16, 2020; decision of Court of Appeals affirmed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings July 22, 2021

STATE OF OREGON,
*Petitioner on Review,*

*v.*

GREGORY LEON HIGHTOWER,
aka Gregory Leon Hightower, Sr.,
*Respondent on Review.*

(CC 120632737) (CA A166654) (SC S067539)

491 P3d 769

During defendant's initial criminal prosecution, the trial court denied defendant's repeated requests for self-representation. On appeal, the Oregon Supreme Court determined that the trial court's decision was not based on a proper exercise of discretion, but instead appeared to reflect an understanding that the trial court did not have discretion to grant the requests midtrial. The Supreme Court reversed defendant's convictions and remanded to the trial court for further proceedings. On remand, the trial court did not order a new trial, but instead stood by its prior denial of defendant's midtrial request to self-represent because it stated that it would have reached the same conclusion under the proper discretionary framework. On appeal, defendant argued that the Supreme Court's decision to reverse and remand the initial case for further proceedings, without additional instructions, required the trial court to grant defendant a new trial. The Oregon Court of Appeals agreed with defendant and reversed. *Held*: Defendant was entitled to a new trial on remand because the record could have developed differently if the trial court had properly exercised its discretion in the first instance.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Peenesh Shah, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* On appeal from Multnomah County Circuit Court, Edward J. Jones, Judge. 301 Or App 750, 459 P3d 266 (2020).

Ernest G. Lannet, Chief Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for respondent on review.

NELSON, J.

Balmer, J., filed a dissent, in which Garrett, J., joined.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**NELSON, J.**

We consider this criminal case for a second time on review. In our first decision in this case, *State v. Hightower*, 361 Or 412, 393 P3d 224 (2017) (*Hightower I*), we determined that the trial court had erred when it denied defendant's midtrial request to dismiss counsel and represent himself based on a mistaken belief that it did not have the authority to grant such a request. We reversed and remanded the case to the trial court for "further proceedings" consistent with that determination. On remand, the trial court did not order a new trial. The court instead stood by its prior denial of defendant's midtrial request to self-represent because it stated that it would have reached the same conclusion—based on defendant's trial disruptions—had it understood it had the discretion to do that. On appeal, defendant argued that this court's decision to reverse and remand the initial case for "further proceedings," without issuing specific limiting instructions, did not permit the trial court to simply provide an alternative explanation for its denial of the request for self-representation, without affording defendant a new trial. The Court of Appeals agreed that defendant was entitled to a new trial on remand and reversed. The state petitioned for review of that decision, and we allowed the petition. Because we agree with the Court of Appeals that defendant was entitled to a new trial on remand, we affirm.

## I.   FACTS AND PROCEDURAL BACKGROUND

A.   Hightower I

Defendant was charged with multiple sex offenses, all based on evidence that he sexually abused a 16-year-old girl and forced her and her 18-year-old stepsister into prostitution. Defendant requested court-appointed counsel, and the court granted that request.

Throughout the first several days of his trial, defendant repeatedly disrupted the proceedings by complaining about the actions of his court-appointed counsel, questioning counsel's performance, publicly instructing counsel to pursue additional questioning, and attempting to raise his own objections to witness testimony. The trial court repeatedly

instructed defendant to be quiet and warned him that continued disruption could result in defendant's removal from the courtroom.

On the fourth day of trial, defendant announced that he wished to represent himself in order to present evidence that his court-appointed attorney refused to offer. The trial court answered by explaining that it was the attorney's job to decide what evidence should be presented at trial, but the court did not otherwise directly respond to the request for self-representation. Throughout the rest of the trial, defendant continued to request permission to self-represent, and the trial court repeatedly denied defendant's requests. Eventually, defendant's court-appointed attorney argued on defendant's behalf that defendant was entitled to represent himself and asked the trial court to explain why it continued to deny defendant's requests. The court responded,

> "Well, I'm not going to take you off the case. I'm not going to right in the middle of the trial and change where we are. Certainly people have a right to represent themselves, but it doesn't start in the middle of the trial, or indeed at the beginning of the defense case."

Court-appointed counsel continued as defendant's trial counsel for the remainder of the case, and defendant was ultimately convicted on all seven counts and sentenced to life in prison without the possibility of parole.

Defendant appealed, challenging the trial court's denials of his repeated motions to represent himself. After the Court of Appeals affirmed, defendant petitioned this court for review. We reversed. We first explained that, although Article I, section 11, of the Oregon Constitution establishes that a criminal defendant has a right to self-representation in a criminal proceeding, that right is not absolute. *Hightower I*, 361 Or at 413. When a defendant's right to self-representation is asserted after the commencement of the criminal trial, the trial court retains discretion to weigh the defendant's constitutional right against the court's obligation to ensure a fair proceeding and its interest in an orderly and expeditious trial. *Id.* When a trial court elects to exercise that discretion, however, its balancing of the competing interests should be reflected on the record. *Id.*

In applying that rule to the facts of defendant's case, we concluded that the trial court's statements appeared to "reflect an understanding that, once trial commenced, defendant had forfeited the right to waive his right to counsel and proceed *pro se*" and did not, as required, "reflect an exercise of discretion." *Id.* at 421-22. In so deciding, we expressly rejected the state's argument that, based on the record and defendant's repeated disruptions during the course of the proceedings, the trial court *could have* made a determination that the court's interest in an orderly trial outweighed defendant's constitutional right to self-representation at that stage in the trial proceedings and that that justified the trial court's decision. *Id.* at 422 (emphasis added). Instead, we noted, "the test is not whether the court 'reasonably could have' made that determination. The test is whether the record reflects that the trial court's actual decision amounted to a reasonable exercise of its discretion." *Id.* Accordingly, we reversed the lower court with a tagline that read,

> "The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and *the case is remanded to the circuit court for further proceedings.*"

*Id.* (emphasis added). The opinion provided no additional instructions.

## B.   Hightower II

On remand, the case was returned to the same trial court judge who had presided over defendant's 2012 criminal trial. Defendant's newly appointed counsel requested a new trial in light of this court's opinion. The state argued, however, that a new trial was not necessary, as long as the trial court articulated on the record what it would have done had it properly exercised its discretion and balanced the competing interests before deciding to deny defendant's request to self-represent. According to the state, in its briefing before the trial court on the issue, "the Oregon Supreme Court decision in *Hightower* merely requires that [the trial court judge] state on the record that balancing of the competing interests has occurred." The trial court agreed with the state's suggested analysis, explaining that if it had "conducted the explicit exercise of discretion expected by

the Supreme Court[,] it would have decided a denial of self-representation was justified" based on concerns about defendant's continued trial disruption.

The trial court then went on to further explain that the written record clearly indicated that the trial court's denials of defendant's motions for self-representation were based on the actions of defendant in the context of his particular case—especially the timing of the requests. The trial court noted, and the written record reflected, that, during the 2012 trial, defendant appeared to be unable to exercise restraint, insisted on raising irrelevant issues, and maintained a general disregard for the court's instructions. The court concluded that defendant was not entitled to a new trial because its previous decision to deny self-representation was now articulated on the record as a proper exercise of discretion. At sentencing, the trial court imposed the same sentences it previously had imposed.

Defendant appealed a second time, arguing that the trial court had erred in ruling that it was unnecessary to hold a new trial. The state responded by arguing that the trial court had acted within the scope of the remand order issued by this court because the court had exercised the discretion available to it in the 2012 trial by placing the reasons for its denial of defendant's request for self-representation on the record in proceedings on remand. The Court of Appeals disagreed. Relying on its own opinion in *State v. Nyquist*, 293 Or App 502, 427 P3d 1137 (2018), the Court of Appeals, in a per curiam opinion, concluded that "'a trial court's abuse of discretion in rejecting a defendant's request for self-representation requires reversal of the defendant's convictions and remand for a new trial.'" *State v. Hightower*, 301 Or App 750, 751, 459 P3d 266 (2020) (*Hightower II*) (quoting *Nyquist*, 293 Or App at 507). The Court of Appeals described the trial court's initial error—its decision to deny defendant's continued requests for self-representation on the mistaken belief that it did not have the authority to grant such a motion midtrial—as not harmless, a finding which, in its view, was implicit in this court's decision to reverse and remand the case in *Hightower I*. *Hightower II*, 301 Or App at 752. Accordingly, the court held that the only option available to the trial court on remand was to grant

defendant's request for a new trial. *Id*. The judgment was reversed, and the state petitioned for review, seeking clarity from this court as to the scope of the trial court's authority on remand.

## II.   DISCUSSION

The parties to this case have presented a specific question about how a trial court should proceed after an appellate court remands a case to that court for further proceedings. Both parties acknowledge that our opinion in *Hightower I* identified a legal error—the trial court's failure to recognize that defendant's midtrial request to self-represent could not be rejected as a matter of law but, instead, presented the court with a discretionary choice— that occurred during defendant's trial. The parties do not agree, however, on what the trial court was permitted, or required, to do on remand to remedy that error. On review, the state proposes that, as a rule, trial courts should have authority on remand to decide if an error identified by the appellate court can be remedied without a new trial, so long as the appellate court's substantive ruling does not foreclose that approach. By contrast, defendant contends that when an appellate court remands a case after concluding that legal error occurred during the original trial, the trial court does not have the authority to retroactively "cure" the error and reinstate the original judgment without conducting a new trial—unless the appellate court's remand instructions specifically provide for that possibility.

The state argues that a new trial is not necessary in every remanded case. Instead, the state proposes a rule that would allow the trial court to evaluate the identified error and determine whether it had a "substantive effect" on the trial. The state contends that its proposed rule recognizes that appellate courts are not always in the best position to evaluate the "substantive effect" of a particular error. In the state's view, some trial court errors do not have a "substantive effect" on the outcome of the trial and, in those cases, the trial court should be free to craft the further proceedings on remand, absent explicit instructions otherwise. The state contends that such a rule would promote the principles of predictability, consistency, efficiency, finality, and justice.

Defendant argues that the state's "substantive effect" approach would effectively undermine the duty and authority of the appellate courts to determine whether errors identified on appeal were harmless and, instead, requests that this court grant defendant a new trial. Defendant claims that his proposed rule—that a new trial is required whenever an appellate court issues a general remand order without limiting instructions that say otherwise—promotes the same judicial principles (predictability, consistency, efficiency, finality, and justice) that the state's rule claims to protect, while still deferring to the appellate courts' authority to determine whether the error was harmless or not. In defendant's view, our decision to issue a general remand order in *Hightower I*, without limiting instructions, did not authorize the trial court to conduct its own remedial efforts because we did not explicitly provide for that option. Thus, defendant contends, a new trial is required to remedy the identified error.

In our view, neither proposed rule fully explains why we conclude that, in this case, defendant was entitled to a new trial on remand. As we explain below, each opinion that results in remand by an appellate court carries with it its own explicit and implicit determinations about how the record developed below and the error that occurred. To interpret the appellate court's decision to remand a case, the trial court should focus not only on the explicit and implicit instructions provided in the appellate court's opinion, but also on the entirety of the record as it relates to the identified error. To explain our decision in this case, we begin with an explanation of what an appellate court decides when it issues a remand order and what we have previously said regarding how a trial court should interpret that decision. Then, to illustrate the approach that a trial court should take when evaluating how to address an error on remand, we turn to some of the cases cited by both parties in support of their own proposed rules—cases where this court did issue limited remand instructions—and describe how those cases can serve as direction for a trial court's own analysis in future cases. Finally, we apply the framework to the facts of this case and explain why defendant was entitled to a new trial on remand.

A.   *Overview of Appellate Decision-Making Process*

We agree with the Court of Appeals that, implicit in our decision to reverse and remand defendant's case the first time it came before our court, was a determination that the error by the trial court was not harmless. *See Hightower II*, 301 Or App at 751-52 ("On that point, we think that implicit in the Supreme Court's decision to reverse and remand is a determination that the trial court's error was not harmless."). Article VII (Amended), section 3, of the Oregon Constitution governs when this court is required to affirm a judgment, despite the occurrence of legal error at trial. That provision reads:

> "If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court."

Article VII (Amended), section 3. That provision provides the foundation for the "harmless error" test employed by this court. *See State v. Davis*, 336 Or 19, 27, 77 P3d 1111 (2003) ("The phrase 'harmless error' is a shorthand reference to a legal standard, discussed below, that the Oregon Constitution requires this court to apply after determining in an appeal or on review that a trial court has erred."). The harmless error test asks a single question: is there little likelihood that a particular error affected the verdict? *Davis*, 336 Or at 32 (quoting *State v. Parker*, 317 Or 225, 234 n 10, 855 P2d 636 (1993)).

Before this court decides to reverse a judgment of conviction based on an error, it has an independent duty to consider whether the error was harmless. *See State v. Sperou*, 365 Or 121, 140, 442 P3d 581 (2019) ("The state has not developed a harmless-error argument, but we have an independent obligation to consider whether defendant

was prejudiced."). In light of that obligation, our decision to reverse defendant's judgment of conviction in *Hightower I*— or, for that matter, our decision to reverse any case where we do not explicitly assert otherwise—carries with it an implicit determination that the trial court's error was not harmless.

After this court identifies a legal error that was not harmless and remands the case to the trial court, that court generally has the flexibility to determine how to proceed on remand, so long as that decision is made within the boundaries set by the appellate court's instructions. *Village at Main Street Phase II, LLC v. Dept. of Rev.*, 360 Or 738, 748, 387 P3d 374 (2016) (*Village II*). There are limitations on that flexibility, however, and the lower court's decisions are "constrained not only by the express order of the appellate court's remand, but also by its implied directive when considered in the context of the court's entire opinion." *Village II*, 360 Or at 748. Specifically, on remand, the trial court must act within the scope of the authority granted to it in the appellate court's opinion. *Id.* at 749.

In addition to our directives, both explicit and implicit, a trial court evaluating how to proceed on remand should also consider whether the record could have developed differently if the trial court had not erred. How a trial court decides to proceed on remand will necessarily depend on the context of the error. The trial court needs to evaluate the error, along with the explicit and implicit instructions from the appellate court, and consider the impact of the error on the record. If the trial court determines that the record could have developed in a materially different way if the error had not occurred, then a defendant is entitled to a new trial.

Before we proceed to an examination of our prior cases in order to illustrate this approach, we emphasize the difference between an appellate court's determination that an error was not harmless and a trial court's subsequent evaluation of the record to determine whether an identified error can be cured without a retrial. Although Article VII (Amended), section 3, of the Oregon Constitution precludes reversal when there is "little likelihood" that a particular error affected the verdict, *see Davis*, 336 Or at 32, there

may be instances in which a reversible error did not affect the verdict in a way that requires a new trial. An appellate court's decision that reversal is required is distinct from a decision about whether retrial is necessary.

As the cases discussed below indicate, sometimes this court may issue specific instructions on remand. In those instances, the trial court must follow the instructions provided. In other cases, we may provide more general remand instructions. We acknowledge that, at times, a general remand order for "further proceedings" can place the trial court in the difficult position of having to determine how to address the identified error. When this court elects to issue such a general remand order, rather than provide more specific instructions, there may be varying reasons for doing so. In some cases, complex factual and legal issues, or strategic decisions by the parties, make it difficult to anticipate the arguments that may be made on remand. Or, a decision to issue a general remand order may reflect our recognition that we may not be in the best position to fully understand the impacts of a more limited remand on the rights of the parties. We try to provide clear directions when we are certain that a new trial is, or is not, required. But, when we do not issue explicit instructions regarding the direction that the trial court should take on remand, we intend this opinion to provide trial courts with some guidance in making that decision.

B.    *Cases Illustrating When an Error May Be Curable Without a New Trial*

There are times that this court has expressly issued specific instructions to trial courts informing them that, under certain conditions, a new trial may not be necessary. Although the cases discussed below have been cited by the parties in support of their own proposed rules, we see them differently: Those cases provide examples of when, and how, an error may be addressed without a new trial.[1]

---

[1] The parties have also cited additional cases in support of their proposed rules, including *State v. Baughman*, 361 Or 386, 393 P3d 1132 (2017), and *State v. Cartwright*, 336 Or 408, 85 P3d 305 (2004). In both of those cases, this court issued limiting instructions that allowed the trial court to cure the error within the record that had already developed. Because those cases are similar to the cases identified here, and would apply the same analysis, we do not discuss them in further detail.

The first of those cases is *State v. Boots*, 315 Or 572, 848 P2d 76 (1993) (*Boots II*). In the defendant's initial trial, the jury considered alternative theories of aggravated murder based on the same criminal action. *State v. Boots*, 308 Or 371, 373, 780 P2d 725 (1989) (*Boots I*). The trial court instructed the jurors that, so long as they could reach a unanimous decision that defendant had committed aggravated murder, they need not agree on the particular theory under which the defendant was guilty. *Boots I*, 308 Or at 374-75. The defendant was convicted. On review, we determined that the trial court's instruction to the jury was reversible error. *Id.* at 381. We remanded the case for further proceedings consistent with our opinion but also included further instructions: "On remand, the state may choose whether to reduce the defendant's conviction and sentence to murder under ORS 163.115 or to retry the charge of aggravated murder." *Id.*

When the case returned to the trial court, the state decided to retry the aggravated murder charge, however, the state elected to pursue only one theory of aggravated murder and took the position that that did not require a retrial of the entire case. *Boots II*, 315 Or at 575. Agreeing with the state that that approach was permissible, the trial court instructed the jury that the defendant had already been convicted of murdering the victim and that its sole function was to determine whether the single aggravating factor on which the state chose to rely existed or not. *Id.* After the defendant was convicted again, he appealed, arguing that the limited retrial was inconsistent with the instructions to the trial court in *Boots I*. This court, ultimately, did not agree with the defendant:

> "There is no question that defendant, in his original trial, was tried and found guilty of the lesser-included offense of murder, ORS 163.115. \*\*\* If all elements of a lesser-included offense have been fully and fairly alleged and proved, an appellate court may order a retrial limited to the element establishing the greater offense. Under the directions given by this court to the trial court, the trial court in this case could do the same, that is, order a retrial limited to those issues that caused the appellate court to reverse defendant's conviction on the greater offense."

*Boots II*, 315 Or at 577.

The actions of the trial court in *Boots II* are in accord with the rule we have articulated. In *Boots I*, the error was in the instructions to the jury about the need for unanimity on the aggravating factors; the error was not in the instructions about the underlying crime of murder. On remand, the trial court could correct course in its instructions about the aggravating factor on which the state chose to rely; the record as to the underlying murder charge would not have developed differently.

The second case that illustrates our approach is *State v. Harrell/Wilson*, 353 Or 247, 297 P3d 461 (2013). There, this court considered whether the trial court had improperly denied both of the defendants' separate midtrial attempts to waive their right to a jury trial. *Harrell/Wilson*, 353 Or at 249. To address that question, this court began by evaluating the constitutional right to waive a jury trial, as guaranteed by Article I, section 11, of the Oregon Constitution and concluded that a trial court can exercise its discretion to grant or deny a midtrial jury waiver but that that decision should be guided by various factors, including judicial economy, the length of the trial, and the preference of the opposing party. *Id*. at 264. After articulating the applicable legal standard, this court evaluated the record in each defendant's case and determined that both trial courts had erred in denying the midtrial jury waiver requests, and remanded both cases back to the trial court for further proceedings.[2] *Id*. at 265-66. Then, this court addressed the

---

[2] Although this court in *Harrell/Wilson* reached the same conclusion as to both defendants, the court's reasons for reaching that conclusion were slightly different in each case. The record in Harrell's case did not reflect the basis for the trial court's decision, and, thus, a remand to reconsider the waiver was appropriate. *See Harrell/Wilson*, 353 Or at 265 ("Because we cannot determine the actual basis on which the trial court refused to consent to defendant's exercise of his right to waive the jury, we conclude that our best course is to remand to the trial court to reconsider defendant's jury trial waiver in accordance with this opinion."). In Wilson's case, the trial court had only considered one of the factors required in reaching its decision, rather than the full set of factors required to properly exercise its discretion. *See id*. at 265-66 ("[T]he trial court erred because it withheld its consent to defendant's jury trial waiver based solely on the prosecutor's perceived objection—a position that was not based on considerations of speed, economy, or the protection of defendant's constitutional rights. Because the trial court withheld its consent to defendant's jury waiver based on an impermissible criterion, its decision in that regard was not produced by an exercise of discretion guided by the above-mentioned considerations. Consequently, we remand to the trial court to reconsider defendant's jury trial waiver.").

proper procedure on remand, explicitly stating that, in both cases, a new trial was not necessary unless, after reconsidering each defendant's midtrial jury trial waiver under the complete, proper framework, the trial court determined that it would have granted the waiver, rather than denying it. *See id.* (remanding *Wilson* to the trial court with instructions to "reconsider defendant's jury trial waiver in accordance with this court's opinion" and, only "[i]n the event the circuit court determines that it should not have withheld its consent to defendant's jury waiver," is it necessary for the trial court to grant a new trial).[3]

In that case, the evidence that was relevant to the court's decision was uncontested and the parties had made all of the arguments they wished to make about whether the defendants should be permitted to waive their jury trial right midtrial. Because of the nature of the errors in those cases, there was a way to remedy the errors without conducting new trials. There, this court explicitly permitted the trial court to decide the issue that had initially been before it, after this court identified the complete proper framework to be applied.

When, as distinct from *Boots* and *Harrell/Wilson*, a trial court does not have the benefit of our instruction, it must determine for itself whether the record would have developed differently had the trial court not erred in the underlying case. As we noted in *Village II*, a trial court should first consider the explicit and implicit instructions contained with the appellate court's opinion. *Village II*, 360 Or at 748. But the trial court cannot stop there, it is also necessary to evaluate the impact that the error identified by the appellate court had on how the record could have developed below. Where the trial court cannot conclude that the record would have developed in materially the same way without the error, a defendant is entitled to a new trial.

---

[3] Harrell's case involved an additional wrinkle, because, at the conclusion of the original trial, "the trial judge stated that he would have acquitted defendant on all eight counts" had he been the finder of fact. *Harrell/Wilson*, 353 Or at 251. As a result, we directed the trial court to "issue an order reversing defendant's convictions and entering judgment of acquittal on all counts," instead of holding a new trial, if it determined that "it should not have withheld its consent to defendant's jury waiver[.]" *Id.* at 266.

C.   *Application to This Case*

We return now to the case before us. Here, the trial court's decision not to grant defendant a new trial was impermissible because one cannot say whether the record below would have remained the same in the absence of the error. When this court first analyzed the decision of the trial court to deny defendant's midtrial request for self-representation in *Hightower I*, we determined that the trial court had based its decision to deny defendant's request on a mistaken understanding of the scope of its authority to grant such a request:

> "[The trial court's] statements do not reflect an exercise of discretion or any finding that granting the motion would significantly delay or disrupt the trial. Rather, as we have noted, they appear to reflect an impression that the law simply does not permit a defendant to waive the right to counsel and proceed *pro se* once trial has commenced. That, as we have explained, is incorrect as a matter of law."

*Hightower I*, 361 Or at 422. To clarify, we did not decide that the trial court had erred in denying defendant's request; instead, we identified the legal error as the trial court's mistaken belief that it did not have the authority to grant the request once trial had commenced. In addition, as discussed above, we implicitly determined that the error was not harmless and, thus, required reversal.

We acknowledge that our decision did not provide explicit direction, one way or another, regarding how the trial court should proceed on remand. However, because the record could have developed differently had the trial court not erred, a new trial was required. On remand, the trial court decided that, if it would have understood the extent of its authority and discretion, it would have denied defendant's motion for self-representation, based on its evaluation of defendant's trial disruptions. That reasoning, however, was not given to defendant in the first instance. Instead, when asked for the reason that it was denying defendant's request for self-representation, the trial court said only that it was not going to take counsel off the case in the middle of the trial. Had the trial court correctly stated the concern that it first expressed on remand, in the context of defendant's

request to represent himself, then the evidence and arguments may have been different. The dissent understands the potential for how the record could have developed, and the consequence of the trial court's decision, differently and, on those points, we respectfully disagree.

Here, it was necessary for the trial court to provide defendant with an opportunity to explain and respond to the trial court's concerns about his disruptive behavior in the context of his requests for self-representation. Because the trial court did not do that in the first instance, and because the record could have developed differently if it had, a new trial was required. In so deciding, we recognize that trial courts are often expected to make decisions in a moment and cannot always see ahead to understand how those decisions, had they been made differently, could have affected the development of the record. Even with the benefit of additional time and collaborative decision-making, we too have difficulty in that regard. In the future, we all must continue to consider how best to promote the principles—predictability, consistency, efficiency, finality, and justice—identified by both the state and defendant here.[4] In this case, though, we have no doubt that the trial court's failure to recognize its discretion in the first instance was an error that could not be corrected without a new trial.

### III.  CONCLUSION

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**BALMER, J.,** dissenting.

I agree with much of the majority's discussion of the proper approach for a trial court to take when an appellate

---

[4] In the interest of promoting those same principles, when a party to an appeal has a request for a specific procedure on remand, whether that procedure would require limiting instructions or not, we encourage parties to present arguments advocating for that procedure before the appellate courts. Although there will be instances where we do not feel adequately informed about the full range of possible issues that may arise in a given limited procedure, and may decline to directly decide those procedures for the trial court, those arguments may allow an opportunity for this court to provide more specific instructions to the trial courts when we decide to do so.

court reverses and remands a case to the trial court "for further proceedings," as we did in *State v. Hightower*, 361 Or 412, 422, 393 P3d 224 (2017) (*Hightower I*). I disagree, however, with the majority's conclusion that the trial court here committed reversible error when it denied, under the standard we set out in *Hightower I*, defendant's request to represent himself and reinstated his conviction. For that reason, I respectfully dissent.

As the majority points out, when this court reverses a lower court decision, we sometimes remand "for further proceedings" and sometimes provide more specific instructions as to what the trial court should or may do on remand. We may direct that the trial court conduct a new trial. *See, e.g.*, *State v. Ward*, 367 Or 188, 190, 475 P3d 420 (2020) (concluding that the trial court erred in denying the defendant's motion to suppress and that that error required a reversal of the defendant's convictions and a remand for a new trial). Or we may provide additional guidance or options for the trial court or the parties short of a new trial. Illustrative is *State v. Cartwright*, where we directed that certain information that should have been available to the defendant be provided to him and that further trial court proceedings be held, after which the trial court was to decide whether it should "reinstate the original judgment of conviction" or whether it "must order a new trial." 336 Or 408, 421, 85 P3d 305 (2004).

We have often taken a similar approach in cases involving evidentiary error. In *State v. Baughman*, for example, we reversed the defendant's multiple convictions for child sex abuse because the trial court incorrectly admitted evidence of similar uncharged conduct for what the court considered to be nonpropensity purposes. 361 Or 386, 410, 393 P3d 1132 (2017). But after reversing the judgment because of the trial court's legal error, we explicitly recognized that a new trial was not necessarily required; rather, the court stated that, "[i]n this circumstance, we think it best to leave it to [the trial court] to determine, on a case-by-case basis, whether, after conducting a correct analysis under OEC 404 and OEC 403, other acts evidence should again be received and whether a new trial is required or appropriate." *Id*. And, in a case quite similar to this one,

*State v. Harrell/Wilson*, 353 Or 247, 297 P3d 461 (2013), this court considered whether the trial court judges in two cases consolidated for appeal failed to apply the correct standard when they denied each defendant's attempts—made, as here, in the middle of trial—to waive their right to a jury. We concluded that both judges had erred in denying those motions because they applied the wrong legal standard. But again—as in *Cartwright*, *Baughman*, and other cases—we did not order new trials, but instead remanded to the trial courts "to reconsider defendant's jury trial waiver" in accordance with this court's opinion. *See id.* at 265 (*Harrell*); *id.* at 266 (*Wilson*). I agree with the majority opinion's view of those precedents.

The majority opinion also is correct in citing and following *Village at Main Street Phase II, LLC II v. Dept. of Rev.*, 360 Or 738, 748, 387 P3d 374 (2016) (*Village II*), for the proposition that a trial court "generally has the flexibility to determine how to proceed on remand, so long as that decision is made within the boundaries set by the appellate court's instructions," 368 Or at 387, including "'the express order of the appellate court's remand * * * [and] its implied directive when considered in the context of the court's entire opinion,'" *id.* (quoting *Village II*, 360 Or at 748).

As to the majority's application of that test here, however, I respectfully disagree. The central holding—indeed, the only holding—in *Hightower I* was that a trial court has discretion to decide whether to permit a defendant to waive the right to counsel and proceed *pro se* once trial has commenced. 361 Or at 422. Reviewing the record in *Hightower I*, we concluded that it appeared from the judge's comments that he did not, in fact, exercise discretion in making his ruling, because he understood the law not to give him any authority to allow a waiver of the right to counsel midtrial. *Id.* In failing to exercise discretion in ruling on defendant's request, the trial court committed legal error. For that reason, we reversed the judgment of conviction and remanded. *Id.*

On remand, defendant argued that a new trial was required. The state took the position that the trial court, as a preliminary matter, should reconsider the error that was the basis for the reversal in *Hightower I*—the denial

of defendant's motion for self-representation—and apply the correct legal standard for ruling on such a motion. The state argued that if, applying the legal standard set out in *Hightower I*, the trial court determined that it would have *allowed* defendant to proceed *pro se*, it should conduct a new trial. If, however, the trial court determined that, applying the correct legal standard, it would again have denied the motion for self-representation, it could reinstate defendant's conviction based on the jury verdict.

The trial court agreed to reconsider its denial of defendant's motion to represent himself, applying the *Hightower I* standard. The court reviewed both the written transcript and the audio record and, in a six-page order explaining its ruling, concluded that "had this court conducted the explicit exercise of discretion expected by the Supreme Court[,] it would have decided a denial of self-representation was justified." The court reviewed at length defendant's abusive conduct towards witnesses during trial, his disruptions and delays, his consistent disregard of the court's instructions, and the court's concerns about its ability to maintain the courtroom without a lawyer there to participate in the management of defendant. The court described defendant as "incapable of meeting the court's reasonable expectations regarding civility or relevance," and stated that defendant "saw self-representation as an escape from the legal and ethical constraints that confined his attorney." Based on those concerns, the court concluded that "it was only with the concerted efforts of the court and defense counsel that the jury was able to hear the case without substantial disruption" and that defendant's "conduct was such that no reasonable judge would have allowed him to handle his own defense."

The majority, however, concludes that, "because the record could have developed differently" if the trial court had exercised its discretion when it first considered defendant's request for self-representation, "a new trial was required." 368 Or at 393. The majority reaches that conclusion in part by noting that implicit in *Hightower I* was this court's conclusion that the trial court error in denying defendant's midtrial request to proceed *pro se* was "not harmless." *Id.* at 386, 392. I again agree with the majority that the initial

error was "not harmless." But that legal conclusion does not necessarily mean that a new trial was required.[1]

Whenever we reverse a trial court judgment, we necessarily have determined that the error below was not harmless. Unless we can conclude that the error was prejudicial, we are required by Article VII (Amended), section 3, to affirm the judgment. *State v. Davis*, 336 Or 19, 28, 77 P3d 1111 (2003) (under Article VII (Amended), section 3, appellate court "must affirm a judgment, despite any error committed at trial, if, after considering all the matters submitted, the court is of the opinion that the judgment 'was such as should have been rendered in the case'"). Because we *reversed* the trial court judgment in *Hightower I*, we necessarily concluded that the trial court's legal error in failing to exercise its discretion when it ruled on defendant's request to proceed *pro se* was not harmless.

But our decisions in *Cartwright*, *Baughman*, and *Harrell/Wilson* were identical in that respect. In each of those cases we concluded that the trial court had erred, and, because we *reversed* the trial court, we *necessarily* found that the error was not harmless. In each of those cases, if we had concluded that the error *was* harmless, we would not have reversed and remanded, but instead would have identified the error, but affirmed. *See, e.g.*, *State v. Ashkins*, 357 Or 642, 643, 357 P3d 490 (2015) (although the trial court erred in failing to give the defendant's proposed concurrence instruction, the error was harmless, and so the defendant's convictions were affirmed). We remanded those cases to the trial court where further proceedings would take place. Depending on the results of those proceedings, including further decisions or orders from the trial court, it may have been appropriate for the trial court to reinstate the judgment or to conduct a new trial.

---

[1] The Court of Appeals appears to disagree. Its opinion below quotes one of its earlier cases for the proposition that "'a trial court's abuse of discretion in rejecting a defendant's request for self-representation requires reversal of the defendant's convictions and remand for new trial.'" *State v. Hightower*, 301 Or App 750, 751, 459 P3 266 (2020) (quoting *State v. Nyquist*, 293 Or App 502, 507, 427 P3d 1137 (2018)). The majority does not need to—and does not—take that approach to resolve this case, and I question whether it is a correct statement of the law.

Here, our opinion in *Hightower I* did not itself fore-close the trial court from reconsidering its ruling on self-representation. If the trial court had concluded on remand that, exercising discretion as required by our opinion, it would have ruled differently and permitted defendant to represent himself, a new trial would have been necessary. But it was also permissible, and certainly not an abuse of discretion here, for the trial court to reconsider its earlier decision under the proper standard and to determine that it would have reached the same result, which it did.

The majority's primary reason for rejecting the trial court's approach here is that the trial court failed to recognize that, "because the record could have developed differently had the trial court not erred, a new trial was required." 368 Or at 392. But the same was true, for example, in *Harrell/Wilson* where, if the trial court had allowed the midtrial motion to waive a jury trial, the record could well have been developed differently by trial counsel—and yet we did not order a new trial. 353 Or at 266. As applied here, the majority asserts that the trial court's reasoning for its decision to deny self-representation—its "evaluation of defendant's trial disruptions"—"was never given to defen-dant in the first instance." 368 Or at 392. If it had been, "the evidence and arguments may have been different." *Id.* at 393. The majority concludes that "[i]t was necessary for the trial court to provide defendant with an opportunity to explain and respond to the trial court's concerns about his disruptive behavior * * *." *Id.* In my view, that explanation is insufficient.

First, *Hightower I* reversed the trial court judgment based on a single error: the trial court's misunderstand-ing that it had no discretion to allow defendant's midtrial request for self-representation. 361 Or at 422. That error was not harmless because *if* the trial court had understood that it had discretion, it might have allowed defendant's request, and, *if* defendant had been allowed to represent himself for the rest of the trial, it is possible that the remain-der of the trial would have played out differently. But, on remand, the trial court certainly was reasonable in think-ing, based on what we said in *Hightower I*, that its reconsid-eration of defendant's request, exercising its discretion, was

a threshold issue. The court did just that and reached the same result. I do not see that as inconsistent with *Hightower I* or as an abuse of the trial court's discretion in deciding whether it would have allowed defendant's request to represent himself.

Second, the majority's statement about why the trial court's decision on remand was error does not seem to connect to the rationale for this court's decision and remand in *Hightower I.* The legal basis for *Hightower I* was the trial court's incorrect understanding that it lacked discretion to allow the midtrial motion; the factual basis was that nothing in the record showed that "the trial court's actual decision amounted to a reasonable exercise of its discretion." 361 Or at 422. Without "some indication" in the record of "how the trial court actually weighed the relevant competing interests involved," an appellate court could not review the decision to determine whether the trial court had abused its discretion in denying self-representation. *Id.* at 421. The court emphasized that the right to waive counsel "is not absolute and unqualified," and, "[i]n particular, once a trial has begun, a number of [other] interests * * * come into play." *Id.* at 417. We described the trial court's "overriding obligation" as ensuring "the fairness and integrity of the trial and its inherent authority to conduct proceedings in an orderly and expeditious manner." *Id.* at 417-18. This court summarized its holding: "If a trial court exercises [its] discretion to deny a defendant's motion for self-representation, it should make a record that reflects how it exercised that discretion." *Id.* at 413.

In its order on remand, as described above, the trial court did exactly what this court asked in *Hightower I.* Nothing in *Hightower I* suggested that the trial court erred during trial by not warning defendant that the court would deny his motion to self-represent if he failed to behave, by not giving defendant the reasoning for its decision regarding self-representation, or by not providing defendant an opportunity to explain and respond to the trial court's concerns. Nor did this court identify any reversible error other than the trial court's failure to exercise discretion in ruling on defendant's request and to provide "some indication" in the record of having done so that was sufficient for appellate

review. In *Hightower I*, we made it clear that a trial court "may reasonably deny [a midtrial motion to proceed *pro se*] if it has reason to conclude that granting the motion would result in disruption of the proceedings." 361 Or at 418. On the record here, the trial court had ample reason to reach that conclusion on remand, and it did so. The errors the majority now identifies in the trial court's initial decision and its decision on remand are different from anything that the court said in *Hightower I*.

Third, the focus of the majority's explanation for why the trial court's ruling on remand should be reversed—that it was unfair to defendant because, had the trial court exercised its discretion in the first place, defendant might have "respond[ed] to the trial court's concerns about his disruptive behavior," 368 Or at 393—does not sufficiently take into account what this court did, and did not, say in *Hightower I* or the record before the trial court. As noted, this court's opinion in *Hightower I* contains no hint that the trial court—either in its initial ruling during trial or on remand—needed to give the defendant another chance to follow court orders during trial, warn him again of what consequences might be imposed if disruptive conduct continued, or explain ahead of time how the court would exercise its discretion if defendant's behavior did not improve. Indeed, in that opinion, we observed that during trial the court already had threatened to remove defendant for his disruptive behavior, 361 Or at 414, without effect. And the requirement of "some indication" in the record that the trial court had actually exercised discretion—which this court in *Hightower I* said was missing, *id.* at 421-22—was linked not to encouraging future improved conduct on the part of defendant, but rather to facilitating appellate review. *See id.* at 421.

The record below clearly indicates that it was highly unlikely that defendant's disruption of the trial, his objectionable treatment of witnesses, and general noncompliance with the trial court's efforts to conduct an orderly and expeditious proceeding would have changed if the trial court had exercised discretion when it made its initial ruling. The trial court's order on remand surveys defendant's inappropriate behavior at trial: his "bullying" and

interruption of witnesses, such as the three "vulnerable, suggestable young women" that he allegedly prostituted; his repeated interruptions of his lawyer; his consistent raising of "irrelevant issues and nonexistent principles of law," and his general lack of restraint and civility. The trial court order and record demonstrate that defendant was unable or unwilling to comply with the court's directives during trial, despite repeated requests and warnings. The trial court's determination on remand that, applying the standard we articulated in *Hightower I*, he would have denied defendant's midtrial request to proceed *pro se* was consistent with our remand and not an abuse of discretion.

For the reasons set out above, I respectfully dissent.

Garrett, J., joins in this dissenting opinion.