Submitted July 17, 2020, reversed and remanded January 12, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BARRY WILLIAM BALES,
*Defendant-Appellant.*

Washington County Circuit Court
C150193CR; A169003

504 P3d 10

In this criminal appeal, defendant challenges the trial court's entry of a conviction on fourth-degree assault and second-degree criminal mischief, following remand from the Court of Appeals. In the prior opinion, the Court of Appeals reversed and remanded the previous judgment because the trial court erred by excluding evidence related to defendant's mental health condition and by denying a motion for judgment of acquittal for third-degree assault, although the Court of Appeals left open the possibility of retrial for fourth-degree assault. On remand, the trial court determined that the proffered evidence was inadmissible on another basis and entered a judgment of conviction for fourth-degree assault and second-degree criminal mischief without holding a new trial. On appeal, defendant argues that the trial court erred by excluding the mental health evidence as irrelevant and by concluding a new trial was not warranted. *Held*: After the trial court's entry of conviction after remand, the Oregon Supreme Court decided *State v. Hightower*, 368 Or 378, 491 P3d 769 (2021), which clarified the analysis the trial court must undertake upon remand from an appellate court when deciding whether a new trial is required. Because the trial court did not undertake that required analysis, the Court of Appeals remanded for the trial court to consider whether, under *Hightower*, a new trial is required.

Reversed and remanded.

D. Charles Bailey, Jr., Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Reversed and remanded.

**HADLOCK, J. pro tempore**

Defendant struck a nurse and damaged medical equipment at a hospital. Following a jury trial, he was convicted of third-degree assault and second-degree criminal mischief. In *State v. Bales*, 289 Or App 470, 484 & n 13, 410 P3d 1088 (2017), we reversed and remanded for two reasons. First, we held that defendant should have been granted a judgment of acquittal on the third-degree assault charge (although the evidence would support a conviction for fourth-degree assault, and we noted that our opinion did not foreclose a retrial on that lesser-included charge). *Id*. Second, we held that the trial court had erroneously excluded evidence—testimony of defendant's caseworker, Kelly—that defendant had offered to show that he had a mental disorder that could impair his ability to form the mental states associated with the charged crimes. *Id*. at 487. On remand, the trial court did not hold a new trial. Instead, the court held a preliminary hearing under OEC 104[1] to determine whether the Kelly testimony should be excluded for reasons other than those upon which the court had initially (and erroneously) relied. The court concluded that the Kelly testimony was irrelevant and, even if the evidence was marginally relevant, the court would still exclude it under OEC 403. Accordingly, the court decided that a retrial was not necessary, and it entered a judgment of conviction for fourth-degree assault and second-degree criminal mischief without holding a new trial.

On appeal, defendant argues that Kelly's testimony was relevant; he also challenges the trial court's decision not to hold a new trial, regardless of whether Kelly's testimony was admissible. As explained below, we reject defendant's relevance argument. However, we conclude that the Supreme Court's recent decision in *State v. Hightower*, 368 Or 378, 491 P3d 769 (2021), requires the trial court to conduct a broader analysis on remand, with respect to whether defendant is entitled to a new trial, than the analysis that the court performed in this case. Accordingly, we again

---

[1] That provision of the Evidence Code states that preliminary questions concerning the admissibility of evidence shall be determined by the court. OEC 104(1).

reverse and remand so that the trial court may undertake the analysis that *Hightower* mandates.

The pertinent facts are procedural and, for purposes of this appeal, undisputed. Defendant was charged with assault (recklessly causing physical injury to the nurse) and criminal mischief (intentionally damaging hospital equipment). Before trial, the court addressed defendant's desire to offer testimony from a lay witness, Kelly, who was defendant's caseworker at LifeWorks Northwest, a mental-health services agency. Defendant argued that Kelly should be allowed to testify about "his observations of [defendant] in the weeks leading up [to] the alleged incidents" to show that defendant had a "disordered mind" that could interfere with his ability to form the culpable mental state associated with the charged crimes. Defendant's argument was premised on ORS 161.300 (2015), which provided that "[e]vidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime."[2] The trial court excluded Kelly's testimony—and, indeed, any "evidence of mental disease or defect under ORS 161.300"—on the ground that defendant had not given what the court perceived to be required notice under ORS 161.309(2).[3] *Bales*, 289 Or App at 484-85. That ruling was embodied both in a pretrial order and in a later ruling by the trial judge. *Id*. at 484.

On appeal, we held that the trial court had erred by excluding Kelly's testimony. We explained that ORS 161.309(2) requires notice only for expert testimony, and it "does not require notice of evidence of mental disease or defect from lay witnesses like Kelly." *Id*. at 485. We rejected the state's argument that we should affirm on the alternative ground that Kelly's testimony was irrelevant, observing

---

[2] ORS 161.300 was amended in 2017 to replace the term "mental disease or defect" with "qualifying mental disorder." That amendment was not effective until January 1, 2018, and does not apply in this case. Accordingly, like the parties, we analyze the evidentiary issue applying the 2015 version of ORS 161.300.

[3] ORS 161.309(2) provides that a defendant "may not introduce in the case in chief expert testimony regarding partial responsibility or diminished capacity under ORS 161.300 unless the defendant gives notice of intent to do so in the manner provided in subsection (3) of this section."

that, had the state made a lack-of-relevance argument below, "the record may have developed differently." *Id*. at 486-87. We therefore reversed and remanded the two convictions. *Id*. at 487.

On remand, the trial court held a preliminary hearing under OEC 104, stating that, if it ultimately ruled that it would exclude the Kelly testimony for reasons other than lack of notice, there would be no need for a retrial. Kelly testified at the OEC 104 hearing about his observations of defendant's behaviors, both over the approximately three years that he had worked with defendant and on a particular date two days before the incident at the hospital. In general, Kelly described defendant as rarely engaged in linear thinking, as sometimes talking to a person "that wasn't there" who defendant "believed was following him," and as sometimes having "a great deal of anger and agitation." Kelly testified that that kind of "disorganization leads to all kinds of difficulties *** in daily life" and "can lead to trouble that leads to contact with the criminal justice system." Kelly testified that his work as defendant's case manager involved seeing defendant once or twice weekly, depending on "what kind of help he needed or what kind of interventions we needed *** to do to keep him out of trouble." Specifically, Kelly helped defendant to cash Social Security checks and spend that money on things he needed. Kelly also tried to divert defendant from imagery or thoughts that he found distressing. In that regard, Kelly agreed with the prosecutor's characterization that he was "basically trying to get [defendant] to stop reacting to what's going on in his head and engage with reality." Kelly also testified that, although defendant's "disorganization was always present," that was "by degrees," and defendant had days on which he experienced less disorganization and less agitation.

With respect to the procedure on remand, defendant did not object to the court holding the OEC 104 hearing at which Kelly testified. He directed part of his argument to the issue that the trial court had identified as the object of the hearing: whether Kelly's testimony was relevant to defendant's mental state at the time of the hospital incident. However, defendant also argued that he was entitled to a new trial regardless of whether the court again would

exclude the Kelly testimony because, based on the court's flawed ruling about the need for notice of *any* evidence related to mental disease or defect, defendant had been unable "to ask any of the witnesses anything that was about mental health or hint[] at it" at the original trial. Defendant emphasized that it was "not just Mr. Kelly's testimony" at issue because "there was other stuff that was not able to be presented because of that prior ruling." The trial court rejected defendant's argument, asserting that the only purpose for the remand required by *Bales* was for the trial court to determine whether it should have admitted Kelly's testimony and, only if so, to hold a retrial.

The trial court later issued a written order ruling that Kelly's testimony was not relevant "because it would need to be conditioned on science or expert based testimony which was not presented at the original trial." The court also stated that Kelly's testimony would not be relevant without "some expert testimony to tie it [(Kelly's testimony about defendant's behaviors and 'disordered mind')] to the alleged incident date." The court also ruled that any "minimal probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and would likely mislead the jurors to impermissibly speculate." The court therefore entered a judgment of conviction for fourth-degree assault and second-degree criminal mischief without holding a new trial.

On appeal, defendant first argues that the trial court erred when it ruled, on remand, that Kelly's testimony was irrelevant to whether defendant acted with the charged culpable mental states when he struck the nurse and destroyed hospital equipment. We reject defendant's relevance argument without extended discussion, noting only that our holding is limited to the record as it exists on appeal, and that any different record that is developed on remand could change the analysis regarding the admissibility of that testimony.

We turn to defendant's contention that he was entitled to a new trial even if the trial court did not err when it excluded Kelly's testimony. As noted, defendant argued on remand that he was entitled to a retrial because the

trial court's erroneous ruling that notice was required for any evidence related to mental disease or defect—even lay testimony—limited the questions that defendant was able to ask other witnesses. The trial court rejected that argument, asserting that all it needed to do was determine the relevance of Kelly's testimony. On appeal, defendant again argues that he was entitled to a new trial on remand—regardless of whether the Kelly testimony ultimately would be deemed irrelevant—because he could have shifted or adjusted his litigation position, if not for the trial court's error. That is, defendant contends, "the court's erroneous ruling under the notice requirement effectively prevented defendant from presenting *other* evidence in support of a 'diminished capacity' defense under ORS 161.300." (Emphasis in defendant's brief.)

Defendant's argument resonates with *Hightower*, a decision that the Supreme Court issued after the trial court's ruling on remand. In that case, the court discussed what a trial court should do after an appellate court reverses and remands a case to that court for further proceedings. 368 Or at 384. The court explained that a trial court "evaluating how to proceed on remand" must not only follow the appellate court's explicit and implicit directives, but "should also consider whether the record could have developed differently had the trial court not erred." *Id*. at 387. "If the trial court determines that the record could have developed in a materially different way if the error had not occurred, then a defendant is entitled to a new trial." *Id*. Thus, unless the appellate court has given specific instructions about the scope of remand, the trial court must "evaluate the impact that the error identified by the appellate court had on how the record could have developed below." *Id*. at 391. And, if "the trial court cannot conclude that the record would have developed in materially the same way without the error, a defendant is entitled to a new trial." *Id*. at 391-92.

The way that the *Hightower* court applied those principles to the case before it also is significant. At the original trial in that case, the trial court had denied the defendant's midtrial request to dismiss his lawyer and represent himself. *Id*. at 380. In an initial appeal, the Supreme Court

held that the trial court had erred because it had mistakenly believed that it lacked authority to grant such a request midtrial. *Id*. The Supreme Court therefore remanded to the trial court for further proceedings. *Id*. On remand, the trial court did not order a new trial because, it explained, it still would have denied the defendant's midtrial request for self-representation if it had understood that it had discretion to do so, given the defendant's disruptive behavior at trial. *Id*.

In *Hightower*, the Supreme Court again reversed and remanded, this time holding explicitly that the defendant was entitled to a new trial. *Id*. at 392. The court rejected the way the trial court had analyzed the case on remand, emphasizing that the record might have developed differently had the trial court explained to the defendant "in the first instance"—that is, when the defendant initially asked to represent himself—why the court was inclined to deny that request:

> "On remand, the trial court decided that, if it would have understood the extent of its authority and discretion, it would have denied defendant's motion for self-representation, based on its evaluation of defendant's trial disruptions. That reasoning, however, was not given to defendant in the first instance. Instead, when asked for the reason that it was denying defendant's request for self-representation, the trial court said only that it was not going to take counsel off the case in the middle of the trial. Had the trial court correctly stated the concern that it first expressed on remand, in the context of defendant's request to represent himself, then the evidence and arguments may have been different."

*Id*. at 392-93. Accordingly, because the trial court had not given the defendant "an opportunity to explain and respond to the trial court's concerns about his disruptive behavior in the context of his requests for self-representation *** in the first instance," and "because the record could have developed differently if it had, a new trial was required." *Id*. at 393.

We understand that aspect of *Hightower* to mean that, after an appellate court remands based on an erroneous

trial court ruling, a trial court must not limit itself to considering whether it might again rule similarly (but on a permissible basis), but must also consider what effect its erroneous ruling had *at the time it was made* and whether the evidentiary record or the parties' arguments might have developed in a materially different way at that time had the trial court not erred.

Turning to this case, we note that our opinion in *Bales* did not "issue specific instructions" that the trial court was required to follow on remand. *See Hightower*, 368 Or at 388 (observing that a court sometimes "may issue specific instructions on remand" that "the trial court must follow"). Instead, the opinion simply reversed and remanded defendant's two convictions, without specifying what should happen next beyond noting the possibility of a retrial. *Bales*, 289 Or App at 484 n 13, 487. On remand, defendant argued to the trial court that he was entitled to a new trial because the court's erroneous ruling regarding the scope of the ORS 161.309(2) notice requirement had prevented him from presenting additional evidence—not just Kelly's testimony—about defendant's mental health. As noted, the trial court rejected that argument, ruling that all it needed to do on remand was address the admissibility of Kelly's testimony. The trial court's ruling regarding the limited scope of remand cannot be squared with *Hightower*'s requirements that the trial court must: (1) consider, on remand, whether "the record could have developed in a materially different way if the error had not occurred," and (2) if the record could have developed differently, grant the defendant a new trial. 368 Or at 387.

The trial court did not have the benefit of *Hightower* when it described what it believed to be its limited task on remand. We therefore remand the case again so that the trial court may engage in the analysis that *Hightower* requires. On remand, the trial court must assess whether the record might have developed in a materially different way if not for the court's erroneous ruling about the type of evidence to which the ORS 161.309(2) notice requirement applies. In doing so, the court must focus, as *Hightower* directs, on how the evidence and the parties' arguments might have

developed "in the first instance" had the court not erred in its rulings—both pretrial and at trial—in the original proceeding.[4] If the court determines that the record might have developed in a materially different way if not for those erroneous rulings, it must grant defendant a new trial.

Reversed and remanded.

---

[4] We observe that the court did give the parties an opportunity to present additional evidence at the OEC 104 hearing and that neither party took advantage of that opportunity. The state suggests on appeal that defendant therefore could have further developed the record to the extent he wished by presenting additional evidence—not limited to Kelly's testimony—in support of a defense under ORS 161.300. We reject that argument, at least as presented in the context of this case, because the trial court expressly limited the scope of its analysis on remand to determining whether the Kelly testimony was relevant, and it did not otherwise consider how its erroneous ruling about the ORS 161.309(2) notice requirement might have affected how the record developed in the original proceedings, as *Hightower* requires.