No. 764              October 30, 2024              711

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DUSTIN RILEY CABLE,
*Defendant-Appellant.*
Crook County Circuit Court
21CR40975; A179118

Daina A. Vitolins, Judge.

Submitted July 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Defendant appeals a judgment convicting him of first-degree burglary, ORS 164.225, and second-degree criminal mischief, ORS 164.354. He assigns error to the trial court's decision to grant his request to proceed *pro se*. He contends that the trial court accepted his waiver of his constitutional right to counsel without ensuring that the waiver was knowing and voluntary because it failed to engage him in a colloquy during which it explained the risks of self-representation. The record does not, however, reflect that the trial court erred. In fact, the trial court conducted thorough colloquies with defendant on multiple occasions, ensuring that he understood his right to be represented by legal counsel as well as the significant risks to him in waiving that right. Because we conclude that defendant validly waived his right to counsel, we do not reach the questions of harmless error under state law or structural error under federal law, and we affirm.

## STANDARD OF REVIEW

We review for legal error when assessing whether the trial court has violated defendant's right to counsel. *State v. Abbott*, 319 Or App 578, 579, 510 P3d 935 (2022). "We view a waiver of the right to counsel in light of the circumstances particular to each case." *Id.*

## FACTS

Defendant's convictions arise from an early morning break-in of a parole officer's home. On appeal, the relevant facts are entirely procedural and somewhat complex.

On August 24, 2021, in Crook County Circuit Court Case No. 21CR40975, defendant was arraigned on a district attorney's information and was appointed counsel. He was subsequently indicted by a grand jury and arraigned in that same case on charges of first-degree burglary, ORS 164.225; first-degree criminal trespass, ORS 164.255; second-degree criminal mischief, ORS 164.354; and second-degree criminal trespass, ORS 164.245.

On October 7, 2021, a grand jury indicted defendant in a new case, Crook County Circuit Court Case No.

21CR48824, for manufacture of methamphetamine, ORS 475.886, and attempt to commit a Class B felony, ORS 161.405(2)(c). Those new charges were related to evidence of drugs that had been discovered in the investigation of Case No. 21CR40975. Defendant was arraigned and appointed counsel in the new case. Ultimately, a superseding indictment was issued that effectively combined the charges of both cases under Case No. 21CR40975. Case No. 21CR48824 was then dismissed. The trial court engaged in discussions with defendant on numerous occasions both before and after the charges from the two cases were combined. We turn to those discussions now.

On November 12, 2021, defense counsel advised the court that defendant wished "to proceed pro se with [defense counsel] as an advisor."[1] The visiting judge responded that he would not "go through the colloquy with [defendant] today," because he "want[ed] to set it in front a * * * judge that's here all the time to go over it."

On November 19, 2021, a regularly sitting judge of the trial court conducted a colloquy with defendant concerning his request to represent himself in both cases:

"THE COURT:   So, [defendant], you wish to go forward to represent yourself in each of these matters?

"[DEFENDANT]:   Yes ma'am.

"THE COURT:   And do you understand—so the case is set for trial on December 6th, there's one count of Unlawful (inaudible) of Methamphetamine and one Attempted Unlawful Delivery of Methamphetamine.

"The first one is a Class B felony with a maximum penalty of up to ten years in prison. The Class C felony maximum penalty is up to five years in—in custody of the

---

[1] Defendant does not assign error to the trial court's allowance of court-appointed counsel to serve as defendant's "legal advisor" or "co-counsel." We nevertheless note the somewhat unusual role of counsel that became a defining characteristic throughout defendant's representation of himself in this matter. The Oregon Supreme Court has characterized the relationship between the right to self-representation and right to counsel as mutually exclusive. *State v. Hightower*, 361 Or 412, 416-17, 393 P3d 224 (2017). While there is no *constitutional* right to hybrid representation—in other words, permitting a criminal defendant to perform the same functions as a lawyer, alongside his lawyer, *Hightower*, 361 Or at 417—a trial court may in its discretion allow, as well as deny, such representation. *State v. Stevens*, 311 Or 119, 124-25, 806 P2d 92 (1991).

Oregon Department of Corrections. Do you understand—do you understand that the—that the cases are significantly serious and carry a heavy potential penalty?

"[DEFENDANT]: Yes ma'am. I have—I've filed two motions to dismiss on all the cases, one being to challenge the search warrant, that it did not have the narcotics on it as items to be seized.

"THE COURT: And so—and so I took a look at that, [defendant], and what I would tell you is that a motion to dismiss is not the appropriate motion to file when you want to essentially exclude evidence, but that's probably something that you do not know because you're not an attorney. Do you understand that?

"[DEFENDANT]: Yeah. We were going forward as [legal advisor] as my advisor. * * *

"* * * * *

"THE COURT: —you would—you would like to represent yourself, but you would like [legal advisor] to stay in a capacity to be able to give you legal advice?

"[DEFENDANT]: Yes ma'am.

"THE COURT: And do you understand that the Deputy DA, or district attorney who will be prosecuting this case, has a law degree?

"[DEFENDANT]: Yes ma'am.

"THE COURT: And so they have an advantage to you in terms of process, procedure, and knowing the law. Do you understand that?

"[DEFENDANT]: Yes ma'am.

"THE COURT: And do you understand that [legal advisor] as—not as just your advisor, but as your attorney, can call witnesses, object to evidence, make legal arguments that you might not be able to do. Do you understand that?

"[DEFENDANT]: Yes ma'am.

"THE COURT: And—and in light of all that, do you still wish to go forward representing yourself with [legal advisor] attending as a legal advisor?

"[DEFENDANT]: Yes, ma'am.

"THE COURT:  All right. And then do you want to do that in both cases?[2]

"[DEFENDANT]:  Yes, please.

"THE COURT:  And so once again let me—I believe the—the other case, again, the Burglary in the First Degree is a Class A felony, that's a—the maximum penalty is up to 20 years in the custody of the Oregon Department of Corrections.

"The Criminal Trespass in the First Degree is a Class A misdemeanor as well as the Criminal Mischief in the Second Degree. Those could be both up to 364 days in the Crook County Jail. And, finally, the Criminal Trespass in the Second Degree is a Class C misdemeanor with up to 30 days in the Crook County Jail.

"And once again, the State is represented by an attorney who has legal training, and—and you are at a disadvantage if you go forward representing yourself versus having [legal advisor] represent you. Do you understand that?

"[DEFENDANT]:  Yes, ma'am.

"THE COURT:  And you still wish to proceed with representing yourself with [legal advisor] as your legal representative? Or legal advisor?

"* * * * *

"[DEFENDANT]:  Yes, please.

"THE COURT:  All right.

"So then I—I will find that your waiver of your right to attorney is freely, knowingly, voluntarily, intelligently made and that I will allow—authorize you to proceed *pro se* with [legal advisor]. You will remain as legal advisor."

The state asked the trial court to clarify its understanding of the *pro se* and legal advisor concepts. The trial court clarified that while it would prefer that defendant not proceed *pro se*, it was confident that defendant understood what he was doing and that the trial court would not limit defendant's legal advisor from speaking to the trial court because he would be helpful to ensure scheduling and to clarify defendant's motions.

---

[2] At the time of this conversation with the trial court, defendant faced charges in both Case No. 21CR40975 and Case No. 21CR48824.

On November 23, 2021, defendant appeared *pro se* for the first time. Over the course of that hearing, the trial court told defendant nine separate times that he should get an attorney and it gave him reasons for doing so.

"THE COURT:  \*\*\* [W]hy are you representing your-self, sir?

"[DEFENDANT]:  Because I felt that was a better way to go.

"\*\*\*\*\*

"THE COURT:  —I think it's a mistake, that's all I can say.

"\*\*\*\*\*

"THE COURT:  And I'll tell you more about a little bit why, but I think it's a mistake. I mean—I mean even—this guy's a—we have rules—I don't know how often you've been in court—and there's a way they do things, and motions are filed, and there's a way they're supported, and attorneys go to law school, and they—some become defense attorneys in districts and they learn those rules and they're better prepared to handle these things, and I don't think that you are. And that's all I can say. And I want you to be successful.

"Don't get me wrong, I want the attorney to do what you want, but I don't think you're going to be successful if you represent [yourself]. You are at a huge disadvantage. You're at a huge disadvantage at this being not, you know, not having a legal background, and not doing it. And I don't want you to be at a disadvantage, so…

"[DEFENDANT]:  That's why I was going forward with [legal advisor] as my advisor."

When the trial court denied defendant's motion to suppress, it told defendant that he was

"identifying some issues, \*\*\* and you're doing okay, but you're going to trial in two weeks and there's rules, and I think you saw them today, \*\*\* you get here [to the hearing], you don't have the warrant, \*\*\* you don't have the evidence \*\*\*. You need an attorney to issue subpoenas \*\*\*."

The trial court continued its warnings throughout that hearing:

"THE COURT:  * * * But I'm telling you right now, you're at an incredible disadvantage * * *.

"You need to get an attorney, and I'll leave it up to you. I know you've gone over it with a judge, but either that, or you're going to have to get a lot of advice from [legal advisor], and you know, and he's not co-counsel, he's not making the call, he is to advise you. But you need somebody to take the bull by the horns and do it.

"* * * I'm encouraging you to get an attorney * * *.

"[DEFENDANT]:  * * * I have the funding in my mailbox, sir, I've just been—

"THE COURT:  To do what?

"[DEFENDANT]:  —incarcerated the whole time. To pay for an attorney.

"* * * * *

"THE COURT:  * * * [Y]ou certainly have the right [to hire an attorney].

"* * * [Court-appointed attorneys and private attorneys] both work equally hard and they're both good, and you've got to give them the correct information and work with them."

The trial court stated that defendant's motion to dismiss, based on the suppression argument, was also denied. Defendant then asked to discuss conditional release, and the court said that it would not conditionally release him.

"THE COURT:  * * * [Y]ou should talk to an attorney and figure out some things.

"* * * * *

"THE COURT:  —you need an attorney to help you advocate, and to say what's happened.

"* * *   There's certain things the court's to consider in making a release decision. * * * There's factors that the court has. You need an attorney to help you on that.

"* * * * *

"THE COURT:  So, I'm going to tell you, there's certain timelines of when things are done, when things are filed, when motions are filed if you want a court to hear it.

"*****

"THE COURT:   You need the help of an attorney. You need to communicate with your attorney and let them know what you want. You're not going to always agree, but he'll give you good advice."

On January 13, 2022, at a motion to dismiss hearing, defendant's legal advisor asked to be released from the advisory role because defendant had not asked for his help. When the trial court asked defendant if he wanted his legal advisor released, defendant said, "Yes, that's fine. Or I don't mind him in the advisory role whatsoever." The trial court declined to release him.

On May 12, 2022, defendant's legal advisor again requested to be relieved of the advisor role. The trial court did not rule on his request. On May 18, 2022, the legal advisor requested clarification of the trial court about his role and whether his understanding that he was to serve as defendant's "co-counsel" was correct. The trial court said it understood that defendant wanted to participate in his own defense, and defendant confirmed, "Co-counsel is what I had requested."

On June 16, 2022, defendant asked for his "co-counsel" to be reduced back to the status of "legal advisor." That legal advisor was permitted to withdraw from defendant's case the following day, and on June 21, a different attorney appeared as defendant's newly appointed legal advisor. On June 28, 2022, at a hearing for one of defendant's motions to dismiss, the new legal advisor clearly stated that she was appearing as legal advisor to defendant and confirmed that defendant was representing himself.

On June 30, 2022, at a trial readiness conference, defendant's legal advisor told the trial court that defendant had put a lot of thought, work, and research into his case, and that defendant was intelligent and capable of representing himself. Before proceeding to trial, the trial court again spoke with defendant about his decision to act as his own lawyer and it again questioned the wisdom of that decision.

"THE COURT:   And, [defendant], *** you would like to *** continue to represent yourself, but [legal advisor] will be present as your legal advisor?

"[DEFENDANT]:   Yes, ma'am.

"THE COURT:    And *** I would appoint [legal advisor] to completely represent you if you wanted to do that, and do you understand that you have that right?

"[DEFENDANT]:   Yes, ma'am. I see [legal advisor] as a more or less a co-counsel, as an advisor, like she said, and a legal coach or—

"THE COURT:   And—

"[DEFENDANT]:   —or what have you.

"THE COURT: And as the Court has previously explained to you, there are dangers when you represent yourself and aren't a trained attorney in a case. Do you understand that?

"[DEFENDANT]:   Yes, ma'am.

"THE COURT:   And that you understand that [prosecutor]—[prosecutor] is a licensed attorney here in the State of Oregon.

"[DEFENDANT]:   I do know that.

"THE COURT:   And you understand that the maximum penalty in this case on Count 1 could be up to 20 years in the custody of the Oregon Department of Corrections? Do you understand that?

"[DEFENDANT]:   Yes—yep. Yes, ma'am.

"THE COURT:   And you understand, again, that an attorney—not as your legal advisor, but as an attorney representing you—would potentially have an advantage over you representing yourself. Do you understand that?

"[DEFENDANT]:   I understand that, yes.

"THE COURT:   And you wish to continue to represent yourself?

"[DEFENDANT]:   Yes, ma'am. I wish to move forward in the same position that we have been.

"THE COURT:   All right."

At the two-day trial, defendant represented himself *pro se* with his court-appointed legal advisor serving as co-counsel, although we note that defendant's legal advisor

was actively involved in examining and cross-examining witnesses and in making objections throughout the trial. Defendant was found guilty of first-degree burglary and second-degree criminal mischief. The first restitution hearing occurred on July 6, 2022, immediately following the trial. Defendant's legal advisor continued to serve as co-counsel during that hearing as well as at the subsequent restitution hearing on November 21, 2022.

## ANALYSIS

The issue is whether the trial court erred when it permitted defendant to represent himself without obtaining a knowing and voluntary waiver of the right to counsel from defendant. We conclude that the trial court did not violate defendant's right to be represented by counsel, but instead ensured the fulfillment of that right by engaging defendant in repeated and extensive discussions about the risks and disadvantages that he would face if he chose to defend himself against the state's significant felony charges. The trial court did not err.

A person accused of committing a crime has a constitutional right to representation by an attorney or to self-representation in the related criminal trial.[3] The "choice either to be represented by [an attorney] or to represent [one]self" belongs to the accused. *State v. Hightower*, 361 Or 412, 417, 393 P3d 224 (2017). "[A] valid waiver of the right to counsel must be preceded by a warning concerning the dangers and disadvantages of self-representation." *Id.* (internal quotation marks omitted). If a criminal defendant wants to waive their right to counsel, the trial court must be satisfied that the defendant has done so intelligently and voluntarily. *State v. Miller*, 214 Or App 494, 504, 166 P3d 591 (2007), *on recons*, 217 Or App 576, 176 P3d 425, *rev den*, 345 Or 95, 189 P3d 750 (2008), *modified on recons*, 228 Or App 742, 209 P3d 380 (2009). Waiver of the right to counsel "need not be express." *State v. Garrett*, 299 Or App 744, 756, 451 P3d 612

___

[3] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

Article I, section 11, of the Oregon Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

(2019), *rev den*, 366 Or 205 (2020). In fact, "a defendant's conduct may serve as a valid waiver so long as the conduct adequately conveys the defendant's knowing and intentional choice to proceed in court without counsel." *Id.* (internal quotation marks omitted). To obtain a knowing and voluntary waiver, "the trial court should focus on what *the defendant* knows and understands." *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992) (emphasis in original). The adequacy of the inquiry is not based on one "particular piece of information," but instead depends on "the record as a whole." *State v. Reynolds*, 224 Or App 411, 417, 198 P3d 432 (2008), *rev den*, 346 Or 158 (2009). The entire record "must show that the defendant knew of his right to counsel—and, if indigent, of his right to court-appointed counsel—and that he intentionally relinquished or abandoned that right." *Id.*

The colloquies in this case were conducted much like the colloquies in *Reynolds*, where we held that the evidence supported the trial court's finding that the defendant knowingly waived his right to counsel. Here, several judges engaged defendant in discussions about his right to counsel many times in the months leading up to trial and at the restitution hearing. They repeatedly warned defendant of the dangers of proceeding *pro se*, in specific terms, often incorporating defendant's own motions and courtroom conduct to explain how representing himself could, and was, potentially disadvantaging him in his case. The trial court's regular conversations with defendant about his representation appear to have been designed to give him pause about his choice and allowed him to regularly appreciate and reconsider the alternative path of representation by counsel and its benefits. Defendant nevertheless chose to decline counsel each time. The record reflects that the trial court urged defendant to consider and reconsider his position without counsel, and it centered its warnings and reminders on relevant and specific references to his case. We conclude that the record as a whole establishes that defendant intentionally and knowingly relinquished his right to counsel.

Affirmed.