No. 45　　　January 23, 2025　　　473

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KOFI ADOMAKO OHENE KYEI,
aka Kofi Kyei,
*Defendant-Appellant.*

Clackamas County Circuit Court
20CN01147; A177752

Thomas J. Rastetter, Judge.

Argued December 11, 2023.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Vacated and remanded.

Pagán, J., concurring in part, dissenting in part.

**MOONEY, S. J.**

Defendant appeals a judgment of punitive contempt, ORS 33.015, for failure to pay child support. He raises five assignments of error through counsel and twelve supplemental assignments representing himself. In the first three assignments, defendant asserts that the trial court erred when it found him in contempt on each of the three counts of failure to pay child support. In support of those assignments, defendant argues that the evidence was insufficient to support the findings of contempt because he had established his inability to pay the underlying support obligation. We conclude, however, that the evidence was sufficient to support the trial court's findings of contempt.

We reject defendant's first and second supplemental assignments asserting pleading irregularities without discussion. The third, fourth, and fifth supplemental assignments are repetitive of the first three assignments of error, essentially challenging on a sufficiency of the evidence basis the trial court's contempt findings and conclusions as to each of the counts alleged in the charging instrument. We reject those three supplemental assignments for the same reasons that we reject the first three assignments on the merits. We reject defendant's sixth and seventh supplemental assignments of error as unpreserved and moot, respectively. We reject the remainder of defendant's supplemental assignments without discussion.

Defendant asserts in his fourth assignment of error that the trial court erred when it held a hearing on two pretrial motions while defendant was not represented by legal counsel. Defendant's fifth assignment challenges the trial court's ruling that he had waived his right to counsel. We conclude that defendant did not waive his right to counsel and that it was, therefore, error for the trial court to conduct a hearing on defendant's motions to change venue and to disqualify the prosecutor while defendant was unrepresented. And because we cannot conclude that conducting the motions hearing while defendant was unrepresented by counsel was harmless, we vacate and remand to the trial court to conduct a new hearing on those motions, with defendant's legal counsel present. If the trial court thereafter grants one

or both of the motions, a new trial would be required. If it denies both motions, a new trial would not be required, and the judgment of contempt would stand.

## I.   THE FACTS

Defendant's daughter was born in 2003. Sole legal custody was awarded to the child's mother and defendant was ordered to pay child support. Defendant rarely complied with his support obligation. There was an agreement by mother at one point to set aside defendant's arrearages in an effort to assist him in obtaining a work permit and employment. Ultimately, in 2017, an administrative order requiring defendant to pay monthly child support in the amount of $995 was entered. A judgment enforcing that administrative support order was later entered in Clackamas County Circuit Court, and we affirmed on appeal. *DA Family Support v. Kyei*, 315 Or App 69, 69-70, 496 P3d 1135 (2021), *rev den*, 369 Or 338, 504 P3d 1180, *cert den*, ___ US ___, 143 S Ct 500 (2022).

The case now on appeal is a separate enforcement action filed by the State of Oregon seeking punitive sanctions against defendant for his failure to comply with the court's support order during three distinct periods of time. On November 4, 2020, although still represented by a lawyer, defendant filed two motions *pro se*: a motion to change venue and a motion to disqualify the prosecuting district attorney. His lawyer filed a motion to withdraw at the same time. On December 9, 2020, the trial court granted counsel's motion to withdraw, but it reset the hearing on the other motions to December 29, 2020, because defendant had not been able to establish a technical connection to appear by remote transmission in court on December 9.

Defendant appeared for the December 29 hearing without counsel and told the court that he had applied for court-appointed counsel but that there had been issues concerning whether the application was received by the court. The trial court addressed defendant and said, "I'm concerned, [defendant], because your attorney was allowed to withdraw back at the beginning of November[1], and here we are at the

---

[1] Defendant's counsel filed a motion to withdraw in early November and was allowed to withdraw on December 9.

end of December, and you still don't have a lawyer." After concluding that the application for court-appointed counsel was untimely and incomplete, the court directed defendant to present his motion to change venue and supporting legal arguments on his own behalf. Defendant responded that he "would like to talk to my attorney and have my attorney present—properly present a legal argument, because I am not a lawyer, and I'm taking [on] the district attorney." The court summarily denied the motion to change venue. Turning to the motion to disqualify the district attorney, the court once again directed defendant to present his motion and legal arguments. Defendant responded that he had not received the district attorney's response, and that he "would like to have the opportunity to respond * * * appropriately." The court concluded that defendant had received service of the response and then summarily denied the motion to disqualify.

Defendant was assigned court-appointed counsel on December 30, 2020. The trial occurred over the course of two days in October and November 2021. The state presented evidence of the court order and defendant's failure to comply with that order. Defendant did not contest (1) the existence of the child support order, (2) the fact that he was at all material times aware of that order, or (3) the fact that he had not paid child support in compliance with that order. Defendant instead testified, and argued, that he was unable to comply with the order because his income was insufficient to pay the ordered amount. He testified that he did not seek modification of the order because he did not have access to certain financial information that the district attorney's office reportedly required of him, and that his prior attempts to modify had been lost by the District Attorney.

Defendant described his financial situation in nonspecific terms—that he struggled to "pay [to live]" and that he received some financial support from family and friends, but he declined to list specific expenses he was struggling to pay or how much support he was receiving. Defendant also gave some nonspecific testimony about a trust that had been created for his other children.

At the conclusion of the two-day contempt trial, the court stated its findings on the record:

"[Defendant] has been recalcitrant at every step to the court orders, to any efforts made by Support Enforcement, and hasn't returned financial documents, hasn't filed a modification. He's never voluntarily paid a dime even when he had income, was able to make direct payments to his daughter. He hasn't cooperated at all with Support Enforcement. And I, frankly, found his testimony to be evasive and not credible. So I will find the State has proven Counts 1, 2, and 3."

## II.   PUNITIVE CONTEMPT

The state bears the burden to prove its punitive contempt charges by proof beyond a reasonable doubt that (1) a valid court order exists, (2) defendant knew of the order, and (3) defendant willfully failed to comply with the order. *State v. Zamora-Skaar*, 308 Or App 337, 351, 480 P3d 1034 (2020); ORS 33.065(9) ("In any proceeding for imposition of a punitive sanction, proof of contempt shall be beyond a reasonable doubt."). Defendant does not dispute the existence of a valid child support order, that he knew of the order, or that he failed to comply with the order. He relies instead on the affirmative defense of inability-to-pay and argues that he met his burden to prove that defense. ORS 33.065(7) ("Inability to comply with a court order is an affirmative defense."); ORS 161.055(2) (burden of proof on affirmative defenses in criminal matters is by a preponderance of the evidence.); *State ex rel Mikkelsen v. Hill*, 315 Or 452, 459, 847 P2d 402 (1993) (applying the preponderance burden to the defendant on his inability-to-pay defense in a punitive contempt case).

A.   *Standard of Review*

We review the trial court's punitive contempt verdict for legal error, reviewing the evidence in the light most favorable to the trial court's verdict. *Id.* Defendant would have been entitled to acquittal based upon his affirmative defense only if "no facts" were presented in evidence upon which "reasonable [persons] could differ" as to whether he had proved his inability-to-pay defense. *State v. Meiser*, 308 Or App 570, 572, 481 P3d 375 (2021), *rev'd in part on other grounds*, 369 Or 347, 506 P3d 402 (2022) (explaining that motion for judgment of acquittal on an affirmative defense may only be granted when no facts are presented upon which reasonable persons could differ).

## B.   *Analysis*

The relationship between the element of willful failure to comply in a punitive contempt charge and an inability-to-comply affirmative defense is that

"'willful disobedience' of a court order to pay child support is established by showing that a party, aware of a court order, neither has complied with nor sought a modification of the court's order. *** [I]n a criminal contempt proceeding brought for failure to pay child support, inability to comply with the support order is an affirmative defense; proving the ability to pay is not an element of the offense. Present law codifies that rule. ORS 33.055(10); 33.065(7) ('Inability to comply with an order of the court is an affirmative defense.')."

*Hill*, 315 Or at 458. "[N]oncompliance with a court order is willful when it is voluntary, that is, a choice by the party not to comply." *Chang v. Chun*, 305 Or App 144, 152, 470 P3d 410 (2020). "A separate showing of 'bad intent' is not required." *Zamora-Skaar*, 308 Or App at 351.

The trial court found that defendant never voluntarily paid his court ordered child support obligation and that he did not request a modification of that obligation when, according to defendant, his financial circumstances changed. We conclude that a rational factfinder could find on this record that defendant willfully failed to pay his child support obligation and that he did not meet his burden to prove that he was unable to pay that support obligation or otherwise comply with the court order.

## III.   RIGHT TO COUNSEL

### A.   *Standard of Review*

We review for legal error when we assess whether the trial court has violated defendant's right to counsel. *State v Cable*, 335 Or App 711, 712, 559 P3d 943 (2024) (citing *State v. Abbott*, 319 Or App 578, 579, 510 P3d 935 (2022)).

### B.   *Analysis*

ORS 33.065(6) provides that, in a punitive contempt proceeding,

"[e]xcept for the right to a jury trial, the defendant is enti-
tled to the constitutional and statutory protections, *includ-
ing the right to appointed counsel*, that a defendant would
be entitled to in a criminal proceeding in which the fine
or term of imprisonment that could be imposed is equiv-
alent to the punitive sanctions sought in the contempt
proceeding."

(Emphasis added.) The state does not dispute that defen-
dant was entitled to counsel in this matter. Given that the
state sought confinement for up to six months on each count
as well as probation and community service, we agree. The
state acknowledges that defendant did not expressly or
impliedly waive his right to counsel. We agree. Instead, the
state suggests that any error was harmless. We conclude
that hearing defendant's motions without defense counsel
and without a waiver of defendant's right to counsel consti-
tuted error that we cannot conclude was harmless.[2]

Although defendant was later appointed counsel and
was represented at the contempt trial, the court required
him to present two pretrial motions without counsel. Those
motions—(1) seeking a change of venue and (2) requesting
the disqualification of the prosecuting attorney—concerned
disputed facts and legal concepts best presented through
legal counsel. We assess whether requiring defendant to
present those motions *pro se* in the absence of a valid waiver
of his right to counsel was harmless by asking "whether the
development and disposition of defendant's pretrial motions
could have been affected if defendant had been represented
by counsel." *State v Richardson*, 159 Or App 592, 602-03,
978 P2d 435, *rev den*, 329 Or 479 (1999).

We are not able to determine, on this record,
whether those motions would have been handled dif-
ferently by legal counsel, or whether the record would
have developed differently in any material way and, if
so, whether the trial court would have ruled differently
had defendant been represented by counsel at the hear-
ing on those motions. The place where a case is tried and
the identity of the person who prosecutes the case for the
state potentially implicate a broad range of issues that

---

[2] Given our disposition, we do not reach defendant's argument under the fed-
eral constitution.

might impact the fundamental fairness of the entire trial. Because of that, we are unable to say that there is "little likelihood that [the court's error] affected the outcome in this case[.]" *State v. Cole*, 323 Or 30, 36, 912 P2d 907 (1996). *See also Richardson*, 159 Or App at 592 (explaining that because of the breadth of the issues implicated by the defendant's motions, we could not say that the error in proceeding without defense counsel was harmless).

We also reject the state's argument that the trial court's rulings on the motions were merely provisional and, therefore, harmless. Although a trial court has broad authority to issue nonfinal rulings on motions and may then reconsider the motions at later points in the litigation, *State v. Oatney*, 369 Or 555, 571, 508 P3d 482 (2022), the court here did not say or write anything suggesting that its rulings were provisional. The order entered in the court's records states, "Motion to Change Place of Venue and Disqualification of Counsel <u>denied</u>." (Underscoring in original.) The court ruled on both motions at the hearing as follows:

> "THE COURT: ***. If you choose to re-file [] a motion [to change venue] at a later time when and if you ever get a lawyer, you are certainly free to do that, but I am not going to wait for you to do—to get a lawyer when it is your responsibility to do so or to make an application for a court-appointed lawyer if you qualify.
>
> "* * * * *
>
> "Consequently, I am going to deny your disqualification of counsel as to the District Attorney's Office, but should you get counsel at some point in the future and choose to re-file that with your counsel, I may reconsider, but right now, no."

That language reflects that the court ruled on the pending motions. Any further consideration would require the filing of another motion.

## C. *Remedy*

Finally, we turn to the proper remedy. The state argues that we should order a limited remand like the Supreme Court did in *Cole* in which the court stated:

> "We remand the case to the circuit court with instructions to grant defendant a new hearing on his motion to suppress evidence. If that motion is denied after the hearing, the circuit court shall again enter the judgment of conviction previously entered. If the motion is allowed, the circuit court shall grant the defendant a new trial."

323 Or at 37. Defendant argues that the Supreme Court implicitly overruled *Cole* in *State v. Hightower*, 368 Or 378, 491 P3d 769 (2021), when it stated that "a defendant is entitled to a new trial" when "the trial court record could have developed in a materially different way if the error had not occurred." *Hightower*, 368 Or at 387. Arguing that the record would have developed differently here had the trial court appointed counsel to represent defendant before the pretrial motions were heard, defendant urges us to reverse and remand to the trial court for a new contempt trial. But we do not read *Cole* and *Hightower* as incompatible, and we do not agree that a new trial is necessarily required here. As Senior Judge Kistler cautioned in his concurring opinion in *State v. Black*:

> "It is difficult to see, however, what interest [requiring a new trial whenever the record might develop differently] would serve when the trial court can correctly reach the same ruling on remand under the appropriate legal standard. The mere fact that the record at the hearing on remand differs under the correct legal standard does not appear to justify putting the parties and the court system to the expense of a new trial. *** I would interpret *Hightower* as holding that a new trial is required when a stand-alone hearing on remand will not fairly serve to adjudicate the issue that the trial court initially decided incorrectly."

317 Or App 181, 186-87, 504 P3d 691, *adh'd to as modified on recons*, 318 Or App 651, 509 P3d 192 (2022) (Kistler, S. J., concurring). *Hightower* provides guidance for determining whether a new trial is required after we have found error, reversed, and remanded the matter to the trial court.

> "After this court identifies a legal error that was not harmless and remands the case to the trial court, that court generally has the flexibility to determine how to proceed on remand, so long as that decision is made within the boundaries set by the appellate court's instructions."

*Hightower*, 368 Or at 387. On remand, a trial court must "focus not only on the explicit and implicit instructions provided in the appellate court's opinion, but also on the entirety of the record as it relates to the identified error." *Id.* at 385.

> "The trial court needs to evaluate the error, along with the explicit and implicit instructions from the appellate court, and consider the impact of the error on the record. If the trial court determines that the record could have developed in a materially different way if the error had not occurred, then a defendant is entitled to a new trial."

*Id.* at 387.

In deciding the scope of remand, we look to our recent cases that apply the *Hightower* principles concerning remedy when there has been a violation of a defendant's right to counsel: *State v. Omar*, 321 Or App 403, 516 P3d 747 (2022); *State v. Joyce*, 332 Or App 580, 549 P3d 581 (2024); *State v. Bales*, 317 Or App 54, 504 P3d 10 (2022); and *State v. Black*.

In both *Omar* and *Joyce*, the error occurred on the day or eve of trial and could not be fixed without a new trial. The defendant in *Omar* made an oral motion for substitute counsel on the morning of his trial, which the trial court denied in error. *Omar*, 321 Or App at 404. On remand from the Supreme Court, we reconsidered our disposition "through the lens of *Hightower*." *Id.* at 405. We remanded with instructions for a new trial, having concluded that the record could have developed differently and that there was no way to "recreate [in retrospect] the opportunity for a real-time interchange with the defendant that could [lead] the trial court to exercise its discretion differently." *Id.* at 406-07 (quoting *Black*, 317 Or App at 186 (Kistler, S. J., concurring) (brackets in *Omar*)).

In *Joyce*, the trial court erred more than once when it failed to conduct the necessary inquiry in response to the defendant's request to proceed *pro se*, with the trial court ultimately granting the defendant's motion to represent himself on the day of trial. *Joyce*, 332 Or App at 583. We concluded there that we could not determine whether the record would have developed differently if the motion had

been granted earlier, because the trial court's error had prevented the defendant from having the time to develop his own case and trial strategy. *Id.* We remanded for a new trial. *Id.*

Unlike *Omar* and *Joyce*, the errors in *Bales* and *Black* occurred during pretrial hearings and not on the day of trial. We ultimately sent *Bales* back to the trial court for a *Hightower* analysis, directing the trial court to "not limit itself to considering whether it might again rule similarly (but on a permissible basis)," and to "consider what effect its erroneous ruling had *at the time it was made* and whether the evidentiary record or the parties' arguments might have developed in a materially different way at that time had the trial court not erred." *Bales*, 317 Or App at 56, 61 (parentheses and emphasis in original). As we explained in *Black*,

> "Where *** the error occurred in a pretrial hearing, that necessarily entails an assessment both of how the error may have materially affected the development of the record at the hearing and how the error may have materially affected the development of the record at trial. If, in either instance, the record could have developed in a materially different way but for the trial court's error, then, as we understand *Hightower*, a defendant is entitled to a new trial, absent explicit direction from the remanding appellate court spelling out a different approach."

*Black*, 317 Or App at 185.

We conclude that, on this record, the trial court must conduct a new hearing, with defense counsel present and participating, on the motions to change venue and to disqualify counsel. If the court again denies those motions, a new trial would not be required, and the judgment would stand. If it grants one or both motions, a new contempt trial would be required. We therefore vacate and remand for further proceedings consistent with this opinion.

Vacated and remanded.

**PAGÁN, J.,** concurring and dissenting.

In an era where trial courts are struggling to appoint defense counsel, and the dockets are overloaded with backlogs from disruptive events like a pandemic or

constitutional shifts in the United States Supreme Court, it behooves our court to seek the most pragmatic disposition possible. The majority opinion, while dutifully respectful to appellant's rights to counsel, falls short in providing efficient justice. I concur with the majority on all points but one: I would conclude that the error in this case regarding the motions made without counsel was harmless, and affirm.

Appellant filed two motions, with the support of counsel who withdrew, to change the venue of the trial and to wholly disqualify the Clackamas County District Attorney's office. It is not unreasonable to observe that both motions were highly unusual, and neither are granted on a regular basis in a criminal contempt proceeding. The alleged basis for the motion to disqualify an entire district attorney's office? An order from this court, in defendant's own long-running case, in which we declined to add the Clackamas County District Attorney as a party instead of or in addition to the State of Oregon. The basis for the motion to change venue? Gleaning from the multitude of reasons cited by appellant, his strongest arguments appear to be that his driver's license was suspended and he had several witnesses from outside the county (not outside the state) that may suffer inconveniences if they were required to testify in person in Oregon City.

Putting aside the reticence of our courts to grapple with creating an appropriate framework for deciding when this scenario requires straight reversal, such as in *State v. Cole*, 323 Or 30, 912 P2d 907 (1996), I agree with federal constitutional analysis that concludes if a defendant is deprived of counsel at one point in proceedings but there is an opportunity to ameliorate and re-address the issues with new counsel later in the same proceedings, the error may be considered harmless. *See Jordan v. Ducharme*, 983 F2d 933 (9th Cir 1993) (concluding that the absence of counsel during pre-trial identification procedures could have been addressed by counsel that was appointed at a later stage). Here, the court invited defendant to revisit the motions with new counsel. New counsel never did so. In that context, we can reasonably presume that new counsel spoke with their client, made a judgment based on their expertise, and

decided against further engagement. I would leave further work on those two issues to post-conviction proceedings, should any be initiated.

I concur in part and dissent in part.